## TUPPER & PORTER *v.* N. F. RIDER AND WIFE.

### . *Married woman. Mortgage. Settlement.*

1. When a wife mortgages her sole property to secure the performance of her husband's contract, she cannot, upon the foreclosure of such mortgage, question the propriety of any act of her husband within the scope of the contract.

2. Where property was sold at public auction, and, it being material to determine its value, the master reported that it did not appear that it was worth more than the auction price, such price will be taken to be its value.

3. Where a contract provides for an accounting, from time to time, and the parties thereto enter into such accounting during the life of the contract, and agree upon a settlement up to a stated time, and the contract is continued in force on the strength of such settlement, the result so arrived at will have the force of an account stated, up to that time, on final adjustment after the termination of the contract, and cannot be disturbed, there being no mistake of fact.

This was a petition brought by the orators against the defendants, N. F. Rider and Annie F. Rider, his wife, to foreclose two mortgages. The case was referred to a special master and heard upon the pleadings and the report of such master at the December Term, Addison County, 1887.

It appeared from the master's report that the first of said mortgages was one given by defendants to one Rich; that there was then due on this mortgage the sum of $1,325.63, and that there was no controversy between the parties with reference thereto. The second mortgage was one given to the petitioners, by the defendants, of the sole and separate property of the wife, to secure the performance of a contract entered into between the defendant, N. F. Rider, on the one part, and the petitioners on the other, May 27, 1884. By the terms of this contract Rider was appointed the agent of the petitioners to carry on and manage their drug business, in the village of Middlebury, and was put into possession of a stock of goods, with certain furniture and fixtures belonging to the petitioners, for that purpose. The

contract was to continue indefinitely, subject to the right of either party to terminate it, on written notice. Articles 4, 5 and 6 of the contract are as follows:

" 4. He, the party of the first part, hereby agrees that he will manage the business in a faithful, careful and skillful manner and for the best interest of the party of the second part, and in so doing he will from time to time replenish the stock in trade by making all necessary purchases with funds derived and taken in sale of the present stock of goods, and pay promptly for the goods so purchased on or before the bills become due and payable.

5. That at all times he will keep an account of the sales and purchases and render to the party of the second part, or either of them, such account and any other information concerning the business on demand together with a true inventory on the first day of June and January next and once in six months thereafter during the agency.

6. And at the same time render and pay to each of the parties of the second part one-fourth of the net profits of the sales made to the time of such inventory, he first paying the rent of the store, the taxes and insurance upon the stock, etc., out of the avails of the sales made, and what of rent he shall realize out of the use of the second story rooms not including the rooms occupied by the said Porter so long as he continues to occupy them."

Article 13 was as follows:

" 13. And the party of the second part in consideration of the service of the party of the first part in said business, and of his aforesaid agreements and undertakings, on their part agree that the party of the first part may keep and take and use as his own one equal half of the net profits of said business provided that the other half to be rendered to the party of the second part as aforesaid amounts to as much or more than six per cent upon $1,500, and it it does not amount to six per cent then he is to pay to the party of the second part six per cent and retain the balance if any to his own use. And at the termination of the agency or in the case of a total loss by fire and

the payment of insurance by the company or companies insuring said stock, furniture and fixtures, there shall be paid to the wife of the party of the first part the whole sum that shall be of assets of said business, whether in cash, goods, furniture and fixtures, less $1,500, and the half of the net profits aforesaid, or six per cent in lieu thereof."

Rider went into possession under this contract, and continued in possession as the agent of the petitioners until Jan. 24, 1887, when the petitioners took possession. He did not pay for new goods purchased according to the terms of the contract, but there were due and outstanding bills of that nature to a considerable amount both at the termination of the agency and at the time of the hearing before the Master.

In the early part of the year 1886 the petitioners had become dissatisfied with the way in which the business was being conducted, and called upon Rider for an accounting. Thereupon an accounting was gone into between them, and a settlement effected April 1, 1886, of all matters up to that date, upon the strength of which Rider was permitted to continue in the business. In this settlement of April 1 the defendant claimed that he should be allowed the sum of $245, which he had paid for clerk hire, and insisted that soon after the beginning of his agency the petitioners had authorized him to employ a clerk at the rate of $2 per week, and that he had actually employed one and paid him the above sum. The petitioners insisted that they had only authorized the employment of this clerk through the soda-water season. In the settlement of April 1 this item of clerk hire had been adjusted by the parties, by allowing the sum of $12. The master found that the employment of the clerk was authorized by the petitioners for an indefinite time, and that Rider employed the clerk with the knowledge and consent of the petitioners until April 1st, 1887, and ought to be allowed therefor.

After the petitioners took possession of the property they endeavored to have Rider take it at $1,500, cash, and made an earnest effort to sell it for $2,000 or less. Finally it was adver-

tised and sold at auction for $1,700. The master found that it did not appear that such property was worth when sold more than such sum of $1,700.

It appeared that in accordance with the terms of the contract inventories had been made from time to time, the last made in January and February, 1887, footing up at about $2,700. The defendants claimed that the inventories fixed the value of the property, but the master reported that such was not the intention of the contract nor the understanding of the parties.

The petitioners had carried on the business between Jan. 24, when they took possession of the goods, and April 1,. when they were sold, as they claim, for the purpose of winding up matters between themselves and the defendant, and in so doing had incurred certain expenses. They had also sold goods from the stock and bought in others. The amount which they had received for goods so sold exceeded the amount which they had expended in purchasing new goods by $69.52. Treating the value of the goods sold April 1, 1887, as what they brought at auction, $1,700, the master found that there was due the orators on that date a balance of $501.76.

Upon the foregoing facts Tyler, chancellor, decreed, *pro forma*, that the defendants pay to the orators the sum of $1,325.63 and interest thereon from June 13, 1887, and the costs of suit to be taxed by the clerk, on or before the first Monday after the second Tuesday in December, 1888, and in default thereof be foreclosed of all equity of redemption in the premises. From this decree both parties appealed.

*W. H. Bliss* and *C. M. Wilds*, for the orators.

The article of clerk hire was adjusted by the settlement of April 1st, and cannot be gone into now. That settlement was a deliberate one; this item was especially discussed and the defendant was allowed to proceed with the business by reason of the adjustment then arrived at. There was no mistake of fact or law. 6 Paige 95 ; 4 Paige 481.

" No practice could be more dangerous than that of opening accounts which the parties themselves have adjusted, on sugges-

tions supported by doubtful or only probable testimony." Marshall, C. J., in *Chappedelaine* v. *Decheneaux*, 4 Cranch 306. See note to *Lockwood* v. *Thorne*, 62 Am., Dec., '85.

N. F. Rider had the right to bind his wife by such statement of account. It was a part of his duty under the contract to render such accounts, and her mortgage was given to secure the results of such accounting. *Koltz* v. *Butler*, 56 Miss. 333.

*L. E. Knapp*, *J. E. Stapleton* and *G. W. Wing*, for the defendants.

The settlement of April 1st lacks the essential elements of an account stated. 1 Wait Act. and Def. 195 ; 6 *id.* 424.

If it has any force as such, it is only *prima facie*, transferring the burden of proof to the party seeking to open it, and is only binding upon the defendant, N. F. Rider. *Rehill* v. *McTague*, 114 Penn. 93 ; *Hutchinson* v. *Market Bank*, 48 Barber 324 ; *Bullock* v. *Boyd*, 2 Ed. Ch. 293. The parties themselves and the master treated it as a matter to be corrected and completed.

The liability of the defendants under the second mortgage depends on the construction of the contract. The main question is what constitutes the " cash, goods, furniture and fixtures" at the termination of the agency. There is no finding in the report as to their value at that time, except what is derived from the inventories, nor is there any finding that the assets were not at that time $2,700, as established by the inventories taken by both the orators and defendants. Rider had received a stock of goods valued at $1,500, and he had returned enough to make good to the orators this sum and their share of the net profits, therefore there was nothing due under the mortgage.

The opinion of the court was delivered by

ROWELL, J. The defendants make but two questions. One is, that the settlement of April 1, 1886, is not binding on Mrs. Rider in respect of the item of clerk hire, and the other is in respect of the orators' accountability for the assets of the store.

We regard that settlement as clearly binding on Rider himself in the respect named. There was no mistake of fact touch-

ing that item.  Rider claimed that he employed the clerk for the whole time by the consent of the orators, while the orators claimed that he hired him by their consent only while the soda-water season lasted, and they credited Rider with $12, one-half the clerk hire for that time, and insisted on settling in that way if at all, to which Rider finally reluctantly consented, in order that he might continue in the business.  This was a compromise by waiver of his claim in respect of that item, and he is bound by it.

But it is said that if he is bound, Mrs. Rider is not, as the item related to a matter not within the scope of the contract, and that the mortgage, which it is conceded is of her sole and separate property, is conditioned only for the performance of the contract by her husband.  If the matter is outside the contract, then it is outside this accounting, and therefore can avail her nothing.  But the contract is one by which her husband was constituted the agent of the orators to carry on and conduct for them the business of their drug-store; and although there is no clause in the contract that expressly authorized Rider to hire a clerk at any expense to the orators, yet the services of a clerk so pertained to the business and was so incident to it, as to bring the hiring of one by the express consent of the orators fairly within the contract, and to make the expense thereof a proper matter of settlement as belonging to the business; and hence Mrs. Rider is bound by her husband's settlement equally with him.

The orators agreed to pay Mr. Rider the whole sum that should be of the assets of the business at the termination of the agency, whether in cash, goods, furniture, or fixtures, less $1,500, and half the net profits or six per cent in lieu thereof.  The agency terminated on Jan. 24, 1887; hence the accounting in respect of assets must be as of that date, and the orators can be allowed nothing for their administration of the business after that.

By the contract, Rider agreed that at the termination of the agency he would pay the orators $1,500, and the interest thereon, or return to them a stock of equal value with the stock, fur-

niture, and fixtures on hand at the time the contract was made and the question is, what shall be the basis of accounting in respect of the value of the assets. The defendants claim that it should be the value of the stock at the time of the termination of the agency, as shown by the inventories referred to by the master. But there is nothing to show that the parties ever agreed upon this or any other mode of fixing the value, and under the finding of the master the inventories are not determinative of value. It does not appear that the value of the original stock was ever fixed, nor how the value of the stock was to be determined on final accounting, in the absence of all which it must be taken that the cash value was to be the basis for all purposes of the contract; and on this basis the value of the stock is fairly fixed by the report, as nothing appears to show it worth more than it sold for. If the defendants claimed it was worth more, they should have shown it.

As to the orators' liability for the unpaid bills incurred by Rider, we do not deem the case ripe for determining, and the orators ask to have the bill dismissed without prejudice in this behalf, and it will be so ordered.

The orators are entitled to a decree for the amount found due on the Rich mortgage, as to which there is no dispute, and for the balance of $501.76, found due on the other mortgage on April 1, 1887, less $69.52, which is the difference between the amount realized by the orators on sales from Jan. 24 to April 1, 1887, and the amount of their disbursements during the same time for accretions to the stock.

*Decree reversed and cause remanded, with mandate.*